**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMPT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOLAREDGE TECHNOLOGIES, INC., and SOLAREDGE TECHNOLOGIES LTD.,<br><br>Defendants. | ) | Civil Action No. 25-1148-CFC-SRF |

**MEMORANDUM ORDER**

At Wilmington this **1st** day of **September, 2026**, the court having considered the parties' Joint Motion for Teleconference to Resolve Protective Order Dispute (D.I. 43), the associated letter briefing (D.I. 47; D.I. 48; D.I. 57; D.I. 58), and the arguments presented during the teleconference on July 14, 2026 (D.I. 56), IT IS ORDERED that the protective order dispute is addressed as follows.

**1. Background.** In May of 2023, plaintiff Ampt, LLC ("Ampt") and SolarEdge Technologies, Inc. and SolarEdge Technologies Ltd. (collectively, "SolarEdge") entered into a Settlement Agreement and a Development and Supply Agreement (the "Development Agreement") to settle a patent infringement case in the District of Delaware and an investigation by the International Trade Commission. (D.I. 2 at ¶ 9) Both the Settlement Agreement and the Development Agreement are governed by U.S. law and contain forum selection clauses requiring litigation to be brought in the District of Delaware, indicating that the parties anticipated litigation in this mutually-selected forum in the event of a breach. (*Id.* at ¶ 7)

**2.** Under the terms of the Development Agreement, Ampt and SolarEdge agreed to jointly develop certain string optimizer products for use in solar panels,[1] and SolarEdge agreed to purchase from Ampt certain minimum amounts of Ampt's products. (*Id.* at ¶¶ 14, 34) The complaint alleges that SolarEdge breached the Development Agreement by failing to purchase the minimum amount of Ampt products required under the contract. (*Id.* at ¶ 19)

**3.** SolarEdge, an Israeli company, claims it was unable to fulfill the terms of the Development Agreement due to a force majeure event that began when Hamas attacked Israel on October 7, 2023. (*Id.* at ¶ 20) Since the initial attack, SolarEdge estimates that between five and ten percent of its employees have been called to serve in the Israeli military, rendering them unavailable to perform on the parties' contract. (*Id.* at ¶¶ 23, 27) For context, SolarEdge represents that it employs approximately 3,000 individuals in Israel, and approximately 700 of those employees are assigned to the division implicated by the Development Agreement. (D.I. 47 at 2) By this estimate, roughly seventy employees in the relevant division would be affected by a call to military service. However, SolarEdge confirms that not all members of the division were critical to the work performed under the Development Agreement. (D.I. 56 at 7:15-8:14) SolarEdge estimates that fewer than twenty engineers in the research and development department were critical to the project at issue. (*Id.*; D.I. 57, Ex. A)

**4.** At issue in the present protective order dispute is whether SolarEdge should be required to collect and produce employee emails and documents pertaining to employee military service without redacting the employees' first and last names and business titles. (D.I. 56 at

[1] String optimizers are devices that allow the voltage output by individual solar panels to be raised or lowered to maximize the power output of each panel in a string of solar panels, allowing for longer and more flexible strings of solar panels to improve efficiency and cost effectiveness. *See Ampt, LLC v. SolarEdge Technologies, Inc.*, C.A. No. 22-997-CFC, D.I. 1 at ¶ 21 (D. Del. July 28, 2022).

4:11-18) There is no dispute that: (1) employee names fall within the definition of personal identifying information ("PII") under the Israeli Privacy Protection Law ("IPPL"), (D.I. 43-1 at ¶ 2(f); D.I. 48 at 1); (2) Ampt does not seek the unredacted disclosure of other PII, such as home addresses, military identification numbers, and social security numbers, (D.I. 48 at 1 n.1); and (3) SolarEdge tracks its employees' military leave in the ordinary course of business, (D.I. 56 at 36:4-37:2).

5. **Legal standard.** A party seeking a protective order bears the burden of showing good cause for its issuance. *Xerox Corp. v. Google, Inc.*, 270 F.R.D 182, 183 (D. Del. 2010). When a protective order has not yet been entered, the side promoting more restrictive provisions bears the burden to demonstrate good cause for the restrictions. Fed. R. Civ. P. 26(c)(1). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal citations and quotation marks omitted). In *Pansy*, the Third Circuit identified the following factors to be weighed in the good cause analysis: (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007) (citing *Pansy*, 23 F.3d at 787–88).

6. **Analysis.** Ampt seeks the unredacted disclosure of SolarEdge employees' names and military service status under a "Highly Confidential" designation at paragraphs 3(f), 4(a), and 4(b) of the proposed stipulated protective order. (D.I. 43, Ex. 1; D.I. 48 at 2) The paragraphs at issue implicate three categories of information: (1) the collection and disclosure of custodial documents and emails containing employee names and military leave status, (D.I. 43, Ex. 1 at ¶¶ 4(a)-(b)); (2) the collection and disclosure of documents and emails that contain the PII of non-custodians, (*id.*); and (3) the clawback of information not subject to disclosure under the terms of the protective order, (*id.* at ¶ 3(f)).

7. The parties have agreed to produce discovery under the Federal Rules of Civil Procedure, as opposed to resorting to discovery procedures under the Hague Convention. (D.I. 47 at 1) The parties also agree that SolarEdge's efforts to obtain informed consents from approximately fifteen individuals critical to the project will not wholly resolve their dispute. (D.I. 57, Ex. A; D.I. 58 at 2; D.I. 56 at 9:21-10:19) They contest: (1) whether the IPPL prohibits the collection and unredacted disclosure of SolarEdge employees' PII, including names and military leave status, for purposes of this litigation; and (2) whether the comity factors should govern the analysis.

8. ***Israeli law.*** Although SolarEdge bears the burden to demonstrate good cause as the party promoting more restrictive provisions in the protective order, SolarEdge focuses on its employees' interest in privacy under the IPPL without expressly addressing the balance of the *Pansy* factors. In this vein, the parties submit competing expert declarations regarding the proper application of the IPPL to the facts of this case. (D.I. 47, Ex. A; D.I. 48, Ex. A) "A district court considering opposing experts' views on foreign law . . . evaluates the 'persuasive force of the opinions they expressed.'" *Skillz Platform Inc. v. Papaya Gaming, Ltd.*, 753 F. Supp. 3d 347,

354 (S.D.N.Y. 2024) (internal quotation marks and citations omitted).[2] The court finds Ampt's expert declaration more persuasive.

**9.** SolarEdge's expert, Nurit Dagan, maintains that the IPPL prohibits the disclosure of an individual's PII, including but not limited to military reserve duty status, to any third party in the absence of the individual's informed consent.[3] (D.I. 47, Ex. A at ¶¶ 17-18) To support the sensitivity of this information, Dagan "note[s] that the Israeli media has previously issued media directives preventing interviews and/or other identification of military service members due, according to the public media, to concerns for the personal safety of soldiers." (*Id.*, Ex. A at ¶ 15) However, Dagan draws no analogy between the dangers presented by public media disclosure and the risks of disclosure under a protective order's "Highly Confidential" designation.

**10.** Dagan acknowledges that separate, individualized consent is not required for business-related documents maintained by the company and stored on a central document management system. (*Id.*, Ex. A at ¶ 23) Dagan also concedes that SolarEdge employees must execute a Global Employee Privacy Notice ("EPN") allowing SolarEdge to monitor employees' email. However, Dagan suggests that the disclosure of data in employee emails nonetheless requires specific informed consent because the EPN "does not refer to the collection and sharing of employees' military service information." (*Id.*, Ex. A at ¶¶ 20-21, 24) In terms of the

---

[2] SolarEdge challenges Ampt's reliance on the court's decision in *Skillz*, noting that the focus of the court's analysis was on the transfer of data as opposed to its collection, and the court did not directly address whether the non-military PII at issue could be collected in accordance with the IPPL because the parties agreed to provide anonymized customer data. (D.I. 56 at 26:11-27:10) Nonetheless, the court finds the *Skillz* case instructive because it addressed protections under the IPPL and considered whether information should nonetheless be produced in U.S. litigation. *Skillz*, 753 F. Supp. 3d at 354-55.

[3] The IPPL defines "consent" to mean "informed, express or implied consent[.]" (D.I. 47, Ex. A at Ex. 2, ¶ 3; D.I. 48, Ex. A at ¶ 28)

consequences for violating the IPPL, Dagan alludes to potential exposure to legal liability, "including civil claims for breach of privacy and statutory damages" as well as possible criminal liability, without citing supporting authority or examples. (*Id.*, Ex. A at ¶ 22) Dagan also admits that Israel's Protection of Privacy Regulations ("DTR") permit the disclosure of PII to opposing counsel in the course of litigation without informed consent. Nonetheless, she asserts that the DTR does not override SolarEdge's obligations to obtain informed consent in accordance with the IPPL. (*Id.*, Ex. A at ¶¶ 37-41)

**11.** Ampt's expert, Amit Ashkenazi, stresses that the PII at issue is maintained by SolarEdge in the course of the employment relationship, and employees are aware that SolarEdge may collect the data under the terms of the EPN. (D.I. 48, Ex. A at ¶¶ 50-60) Specifically, SolarEdge collects and processes attendance data, including data on active military service, to support its human resources management and legal obligations. (*Id.*, Ex. A at ¶¶ 52, 56(a)) Ashkenazi further explains that Ampt's proposed protective order language satisfies Israeli data transfer regulations by "includ[ing] strict limitations on the processing of the data, limiting access to it to specific staff, limiting its use only for the case at hand, and [including] requirements for information security." (*Id.*, Ex. A at ¶ 76)

**12.** To the extent that SolarEdge contends employee PII may only be disclosed with the employee's informed consent under the IPPL, the consent requirement is met here. SolarEdge's EPN expressly provides that the company shares current and former employee PII with affiliates, suppliers, and vendors, as well as "institutions and authorities, when . . . required to do so by law, or to respond to legal process[.]" (D.I. 47, Ex. A at Ex. 11 at 2) The EPN states that this processing of PII "is based on [the employee's] consent" and further explains that the employee's agreement to the EPN signifies the employee's consent to the transfer of PII

"between various sites." (*Id.*) The categories of information subject to the EPN include employee absence information and PII "contained in emails sent to and from employees and business partners, suppliers and customers, and other third parties and in other documents processed on our systems[.]" (*Id.*, Ex. A at Ex. 11 at 3) The EPN specifies that failure to provide consent or withdrawal of consent for the processing of PII "may impact [SolarEdge's] ability to maintain the employment or consulting relationship, as certain [PII] is essential for carrying out our obligations as an employer / engaging party." (*Id.*, Ex. A at Ex. 11 at 1)

**13.** Thus, the EPN establishes that SolarEdge employees were informed their PII and/or emails could be collected to satisfy SolarEdge's legal obligations. (*Id.*) The disclosure of the PII in U.S. litigation was foreseeable because the parties mutually agreed to a Delaware forum selection clause and choice of law provision. (D.I. 2 at ¶ 7) SolarEdge has not shown that a heightened level of consent is required under the IPPL for the disclosure of military service data. (D.I. 47, Ex. A at Ex. 2 at 38) It is also undisputed that the parties' competing experts fail to identify any decision by an Israeli court finding an Israeli company violated the IPPL by complying with a foreign nation's discovery protocols. (D.I. 56 at 22:21-23:9); *see Skillz*, 753 F. Supp. 3d at 354 (noting that neither of the parties' competing experts "cites any decision by an Israeli court in which an Israeli company has been found to violate the PPL by complying with a foreign nation's discovery protocols. Nor has either expert referenced any civil or criminal enforcement action against an Israeli company or individual on that basis.").

**14.** Moreover, the record before the court indicates that SolarEdge has already transferred information, such as employee emails, to third-party servers outside of Israel before obtaining individualized informed consents from each of those employees. (D.I. 57 at 2) At times, SolarEdge attempts to draw a distinction between disclosures to third parties who work for

SolarEdge and disclosures to Ampt, a litigation adversary. (D.I. 56 at 28:9-22) At other times, SolarEdge suggests that a disclosure of PII without individualized informed consents violates the IPPL regardless of the surrounding circumstances. (*See id.* at 37:12-13) ("[A] disclosure is a disclosure whether it's made confidentially to a few people or whether it's not."). Regardless, SolarEdge does not cite the IPPL or other legal authority to support its position that a disclosure to a third-party vendor warrants the application of a less stringent standard. SolarEdge's third-party disclosures of employee PII are inconsistent with its current stance that such disclosures violate the IPPL and could result in civil penalties.

**15.** In sum, the record before the court supports a conclusion that the IPPL does not prohibit the collection and unredacted disclosure of SolarEdge employees' names and military leave status for purposes of this litigation. SolarEdge employees consented to the disclosure of their attendance information and email communications pursuant to the EPN, which expressly contemplates the disclosure of employee PII to "institutions and authorities" as required by law or to respond to legal process. (D.I. 47, Ex. A at Ex. 11 at 2) SolarEdge has also failed to demonstrate that individualized informed consent regarding the disclosure of employees' military service status is required under the IPPL. (D.I. 48, Ex. A at ¶¶ 5, 56, 79) Even if the disclosures of this information would violate the IPPL, the *Skillz* court recognized that the IPPL "grants a good defense from enforcement to anyone who otherwise violates the law, so long as the violation was committed under circumstances in which the perpetrator had a legal, moral, social or professional duty to do so." *Skillz*, 753 F. Supp. 3d at 355 (internal quotation marks and citations omitted). Thus, Ampt's version of the proposed stipulated protective order adequately protects both Israeli and U.S. interests. *Id.* at 354.

**16. *International comity.*** The same result would hold even if the court were persuaded that the IPPL protects SolarEdge employees' names and/or military service status from disclosure in discovery.[4] PII "is generally considered benign in U.S. litigation" and is produced in unredacted form under the Federal Rules of Civil Procedure. *See In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *1, 5 (D.N.J. Jan. 30, 2020). The court considers the factors applicable to the international comity analysis as set forth in *Société Nationale Industrielle Aérospatiale v. U.S. District Court for the District of Iowa*, 482 U.S. 522 (1987):

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28. The parties focus primarily on the first, third, and fifth factors. (D.I. 57; D.I. 58) There is no dispute that the second and fourth factors favor Ampt because the requested discovery is sufficiently specific and it is not publicly available. (D.I. 57 at 2 n.3)

**17.** The first comity factor weighs in favor of Ampt because the names and military service status of SolarEdge's employees are central to the merits of SolarEdge's force majeure defense. SolarEdge does not dispute the information's importance. (D.I. 57 at 1) ("The information sought—identifying (by name) which of the previously-disclosed SolarEdge employees served military duty—is important to proving SolarEdge's force majeure defense (and other defenses) in this action."). Instead, SolarEdge suggests that the information is only important to the party that bears the burden of proof on the defense, and Ampt will suffer no

---

[4] The court makes no ruling on whether a conflict of law exists or whether such a conflict is a prerequisite of the comity analysis.

prejudice if SolarEdge cannot prove its employees were unavailable. (*Id.*) SolarEdge's position would effectively give it unilateral control over the scope of discovery into the affirmative defense it asserts to excuse the nonperformance of its contractual obligations, placing Ampt at a disadvantage in its pursuit of witnesses with relevant information needed to rebut the affirmative defense. Denying equal access to discovery materials does not promote fairness and efficiency among litigants in the context of the good cause analysis. SolarEdge cites no authority to support its position on the first comity factor, which is inconsistent with "the preference expressed in the Federal Rules of Civil Procedure in general . . . for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010).

**18.** The third factor weighs in favor of SolarEdge because the information is not stored within the United States. (D.I. 57 at 1-2; D.I. 48 at 3)

**19.** The fifth factor weighs in favor of Ampt. The United States has a strong interest in this civil action regarding the Development Agreement, a contract resulting from a negotiated resolution of two U.S. federal proceedings that includes a Delaware forum selection clause and a Delaware choice of law provision. (D.I. 2, Ex. A) SolarEdge does not refute the importance of the United States' interests in the litigation. (D.I. 57 at 2) Israel's interest in protecting the PII of its citizens does not outweigh the interests of the United States because "the weight of the foreign privacy interest . . . is 'diminished where the court has entered a protective order preventing disclosure of the secret information.' " *In re Mercedes*, 2020 WL 487288, at *8 (quoting *Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019)).

**20.** On balance, four of the five comity factors weigh in favor of Ampt and support the application of U.S. law to the present dispute. SolarEdge has also failed to demonstrate good cause under the *Pansy* factors. The information at issue is being sought for a legitimate purpose,

and sharing the information will promote fairness and efficiency. SolarEdge's articulation of the potential harm resulting from disclosure is not persuasive because it contemplates public disclosures of employees' military status without acknowledging the "Highly Confidential" designation this information would receive under the protective order.[5] (*See* D.I. 56 at 18:7-19:4; D.I. 47, Ex. A at ¶ 15) On this record, SolarEdge has not demonstrated good cause for the redaction of highly relevant PII.

**21.** ***Disputed paragraphs of the proposed protective order.*** For the foregoing reasons, the court concludes that neither the IPPL nor the comity factors support redacting the names and military leave status of SolarEdge employees under paragraphs 4(a) and (b) of the proposed protective order. Because all SolarEdge employees consent to the disclosure of their PII by executing the EPN, custodial documents and emails containing employee names and military leave status may be collected and disclosed in unredacted form, even if the custodial documents contain the PII of non-custodial SolarEdge employees.[6] (D.I. 43, Ex. 1 at ¶¶ 4(a)-(b)) In accordance with Ampt's representations, the PII to be collected and disclosed in unredacted form is limited to the names and military service status of SolarEdge employees during the relevant time period between October 7, 2023 and July 30, 2026. (D.I. 48 at 2; D.I. 57 at 3 n.6) To ensure enhanced protection and controlled access over this information, the court adopts the

---

[5] The Declaration of Nurit Dagan cites media directives issued by the Israeli military to prevent "interviews and/or other identification of military service members due, according to the public media, to concerns for the personal safety of soldiers." (D.I. 47, Ex. A at ¶ 15) At the hearing, counsel analogized the disclosure of military status information to the publication of a judge's address. (D.I. 56 at 18:22-24) These examples are not comparable to disclosures made to a select group of individuals under a "Highly Confidential" designation.

[6] SolarEdge's concerns about the PII of non-custodians appearing in custodial email are admittedly speculative, and SolarEdge represents that "it's unlikely that there is a lot of that type of thing going on in e-mails[.]" (D.I. 56 at 32:3-15)

proposal of Ampt's expert to transfer the sensitive data via a "secure data room." (D.I. 48, Ex. A at ¶ 85)

**22.** At paragraph 3(f) of the proposed protective order, the parties submit competing proposals to govern the clawback of protected PII. (D.I. 43, Ex. 1 at ¶ 3(f)) Consistent with the foregoing rulings, the inadvertent disclosure of PII beyond the names and military service status of SolarEdge employees, such as home addresses, Israeli social security numbers, and military identification numbers, remains subject to Ampt's proposed clawback provision at paragraph 3(f). (*Id.*, Ex. 1 at ¶ 3(f))

**23. Conclusion.** For the foregoing reasons, Ampt's proposals at paragraphs 3(f), 4(a), and 4(b) of the stipulated proposed protective order are ADOPTED. Consistent with this Memorandum Order, on or before **September 8, 2026**, the parties shall docket a revised proposed protective order which includes Ampt's proposals and adds language providing for the transfer of information via a "secure data room."

**24.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **September 8, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court

determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**25.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**26.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE